nesses are shown to be unworthy of belief by reason of the statements made by them out of court in conflict with their subsequent testimony. We cannot hold, however, that their evidence should be discredited as matter of law. It should be submitted to the jury, with proper instructions as to the rules by which they should be guided in endeavoring to arrive at the truth. For the foregoing reasons, we are compelled to direct a reversal of the judgment.

Judgment reversed, and new trial granted, costs to abide the event. All concur.

---

### JACKSON et al. v. STONE.

(Supreme Court, Appellate Division, First Department. February 23, 1900.)

ATTORNEY AND CLIENT—COMPENSATION—SPECIAL AGREEMENT—FURTHER ALLOWANCE—CONSIDERATION.

> Where an attorney specially agreed with executors on his compensation for collecting a claim, and, after suit brought, on being asked to hasten the matter, replied that if costs were remitted he could procure judgment on such claim and other claims, and asked for further compensation, and subsequent to the judgment, which was procured without waiting for a response to his request, such executor consented to a further allowance, but afterwards advised him that the other executors would not consent thereto, the attorney is not entitled to such further allowance, since the agreement was without consideration, as by his original contract the costs belonged to his clients, and there was no showing that costs in the other actions were remitted to procure such judgment.

Appeal from special term, New York county.

Application of Henry H. Jackson and others to compel William L. Stone, Jr., to pay over moneys held by him as their attorney. From an order granting the application, William L. Stone, Jr., appeals. Affirmed.

The following is the opinion of the court below (BOOKSTAVER, J.):

This is an application to compel an attorney to pay over money to clients, who are executors and trustees of an estate. The only question involved is the amount which the attorney is entitled to withhold as compensation, he having already offered to pay into court what he considers them entitled to. His agreement with the executors was that he should receive twenty per cent. of the principal and interest of the claim, when collected. Subsequently, and while the suit was pending, he called upon Henry H. Jackson, the executor, with whom all his dealings were had. Mr. Jackson at that interview asked him to hasten the matter, as they wished to get the money speedily. He replied that he could probably reach an agreement with the corporation counsel to grant judgment on the Jackson claim, and also a number of other claims at the same time, if the costs accrued at that time, and amounting to about $100 in each case, were remitted. He also asked Mr. Jackson to agree to allow him something in addition to the twenty per cent. specified in the original contract. Evidently no agreement to pay anything more was reached at that meeting, because, in his own affidavit, it is stated, "I told him [Jackson] to think over the proposition, and let me know what he thought of it." Subsequently, and after he had obtained the judgment as desired, he had another interview with Mr. Jackson, who consented to allow him, as he states in his affidavit, "between two and three hundred dollars" additional, but subsequently advised him that the other executors would not consent to any additional compensation. It is very difficult to make out, from the respondent's own statement of the case, that there was ever any definite

meeting of the minds between him and Mr. Jackson for any extra payment. Besides this, there does not seem to have been any consideration to support an agreement, if made. By reason of the special agreement for compensation, the costs in this particular action belonged to the clients, and not to the attorney; and there is no statement that, in order to secure a speedy settlement and judgment in this action, it was necessary to remit costs in the other actions that were settled at the same time with it. Furthermore, it appears that the respondent did not wait for Mr. Jackson's response to his suggestion for additional compensation, but proceeded to settle the suit, seemingly relying upon the chance that the executors would subsequently be willing to modify the original agreement. This they refused to do. Motion granted. Give notice of settlement.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, INGRAHAM, and McLAUGHLIN, JJ.

A. I. Sire, for appellant.

E. W. S. Johnston, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on the opinion of the court below.

---

BELL TEL. CO. OF BUFFALO v. HOME TEL. CO. OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department. May 22, 1900.)

PLEADING—SUPPLEMENTARY COMPLAINT—SERVING—WHEN ALLOWED.

Plaintiff, a telephone company, filed a complaint seeking to have an ordinance requiring it to allow other companies to use its poles and conduits, or on refusal to forfeit its franchise, declared void, and its enforcement enjoined. While the action was pending the mayor vetoed the ordinance, and the same ordinance was again passed and approved, without allowing plaintiff a hearing, as he was entitled to under the council rules. *Held*, that leave should be granted to serve a supplemental complaint setting forth acts done after the commencement of the action resulting in the repassage of the ordinance.

Appeal from special term, Monroe county.

Action by the Bell Telephone Company of Buffalo against the Home Telephone Company of Rochester and others. From an order denying leave to plaintiff to serve a supplemental complaint, it appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John A. Barhite, for appellant.

Joseph W. Taylor, for respondents.

McLENNAN, J. The action was begun on the 7th day of December, 1899, to procure a judgment declaring void a certain resolution passed by the common council of the city of Rochester on the 5th day of December, 1899, which, among other things, provided that the plaintiff, which owned and was engaged in operating lines of electric telephones in said city under a certain contract made and entered into by and between it and said city, should be compelled to permit the defendant companies, which were also engaged in transmitting electricity along and under the streets of said city, to occupy its poles